## PIONEER MUTUAL CASUALTY CO. OF OHIO v · PENNSYLVANIA GREYHOUND LINES, INC. et

Ohio Appeals, 3rd Dist, Henry Co

No 314. Decided May 14, 1941

384

William A. Finn, Toledo; Wilbur E. Benoy, Columbus; R. G. Saxby, Columbus, for plaintiff-appellant.

Doyle & Lewis, Toledo; James Donovan, Jr., Napoleon; Bowman, Hanna & Middleton, Bowling Green, for defendants-appellees.

**386**

## OPINION

**By GUERNSEY, J.**

This is an appeal upon questions of law and fact from a judgment of the Court of Common Pleas of Henry County, Ohio, in an action pending therein wherein The Pioneer Mutual Casualty Company of Ohio, was plaintiff and Pennsylvania Greyhound Lines, Inc., Charles Bauman and Gerald Nye were defendants.

The judgment from which this appeal is taken, was entered November 19, 1940, and omitting the caption and signature of the judge, is in the words and figures following, to-wit:

"This day this cause came on to be heard upon the demurrer of defendant, Pennsylvania Greyhound Lines, Inc., to the petition; and the court having, upon application of the plaintiff, permitted plaintiff to file its amendment to the petition, prior to the date of the hearing of said demurrer, the court now considers the demurrer as being filed to both the petition and the amendment thereto, and does sustain said demurrer.

"This cause coming on further to be heard upon the motion of defendant, Charles Bauman, to the petition, and the court electing to consider such motion as a demurrer to the petition and the amendment thereto, does find that said motion so treated as such demurrer is well taken and does sustain motion as a demurrer to the petition and amendment thereto.

"Plaintiff, having been given leave to amend, in open court, announced that it did not desire to amend and elected to stand upon the petition and amendment thereto; and, plaintiff not desiring to amend, the court does order that said petition and amendment thereto be and the same are hereby dismissed.

"It is ordered that plaintiff pay the costs taxed at $____.

"To all of which plaintiffs except."

The petition referred to in the judgment, omitting the caption and formal parts, is in the words and figures following, to-wit:

Plaintiff, The Pioneer Mutual Casualty Company of Ohio, is a corporation organized and existing under the laws of the State of Ohio for the purpose of conducting an insurance business on the mutual plan as provided in §9607-2 GC, and is duly licensed for such purpose.

Pennsylvania Greyhound Lines, Inc., is a corporation duly organized under the laws of the State of Delaware and engaged in business as a common carrier for transportation of passengers for hire over the public highways of the State of Ohio, and elsewhere.

Gerald Nye is a minor 19 years of age.

Plaintiff, for its cause of action, says that defendant Charles Bauman first applied for insurance from plaintiff on the 3rd day of May, 1937, and at that time made certain representations in said application as to the use of the truck for which said coverage was asked; that from year to year said insurance was renewed on the anniversary date thereof.

That when said policy of insurance was renewed on May 3, 1938, said insurance was accepted by plaintiff on the basis of the truth of certain statements contained in said application in which said defendant Charles Bauman represented that said truck would not be driven more than fifty miles from Napoleon, Ohio; that the approximate number of trips made each week or month was occasional; and that said truck was driven sometimes at night but not often; further that said truck was driven by two hired drivers who were paid by the day and operated the same regularly and that said drivers were of American nationality, white, and had normal rest periods.

Upon the representations so made said insurance was accepted by plain-

tiff and said truck given a rating as a farm commodity truck; and on the strength of said application said policy was again renewed on the renewal date of May 3, 1939.

During the month of January, 1940, plaintiff, for the purpose of checking on the rating given said truck, and the desirability of retaining said insurance risk, requested the defendant Charles Bauman to furnish it with a written report concerning the use of said truck, as a result of which Charles Bauman furnished a written; signed report representing that said truck was used for the purpose of hauling farm products and livestock; representing that it carried applicant's property but not the property of others; representing that the principal towns to which said truck was driven, or would be driven, were Archbald, Wauseon, Delta, Liberty Center, Deshler, Holgate, Toledo and Hicksville and the fartherest point to which said truck would be driven was Sandusky, Ohio; representing that trips were made with said truck approximately each day, except Sundays, and that said truck was very seldom driven at night; representing that said truck was driven by two hired drivers who were paid by the day; representing that extra drivers were not used; representing that no rest periods were needed as the drivers were not gone sufficiently long to require rest periods; and representing that the nationality of said drivers were American, aged 24 and 27, respectively, and white. On the strength of said representations and believing them to be true, and having no knowledge to the contrary, plaintiff continued on said risk and, on May 3, 1940, renewed its policy of insurance on said truck whereby it insured the 1939 Chevrolet truck described in said policy as bearing serial number IVNO3-3676 and motor number H2372820, against loss from fire; theft and tornado, and agreed to indemnify said Charles Bauman against his legal liability for loss due to bodily injury liability, including death, with a limit to each person injured of $5,000 and a limit to each accident of $10,000 and against loss from

property damage limited to $5,000 for each accident, for which insurance, during the first three months period following May 3. 1940, Charles Bauman paid plaintiff a premium of $12.00

Said policy so issued to said defendant Charles Bauman under No. C11-470, became effective on May 3, 1940. Said policy provided, and the insured in accepting the same agreed, that the policy was made and accepted subject to the declarations contained in said policy, and to the conditions and stipulations printed therein, together with such other provisions, agreements, or conditions as might be endorsed thereon or added thereto. Said policy further provided that the entire policy should be void if the assured or his agent had concealed or misrepresented in writing, or otherwise, any material fact or circumstance concerning said insurance or the subject thereof; or if the assured or his agents made any attempt to defraud the company either before or after the loss.

Plaintiff says that said Charles Bauman was not the exclusive owner of said insured property but says that the same belonged to a partnership in which one Ralph Brown was a part owner. That while the legal title to the physical properties of said partnership was in Charles Bauman, the said Ralph Brown has an undivided interest therein, and said truck on July 12, 1940, was being operated by, and in the interest of a partnership consisting of said Bauman and Ralph Brown, who were then and there engaged in buying, selling and delivering livestock to and from a stockyard maintained by them in Napoleon.

The warranties contained in said policy specified that said automobile was used for hauling livestock and farm products. Plaintiff says that said warranty, and the representation contained in the report furnished by defendant Charles Bauman in connection therewith, was untrue in that no farm products except livestock, were transported in the said truck and said truck was used exclusively for the transportation of livestock to and from Napo-

leon, Ohio, in connection with the partnership business aforesaid; that said representation implied that said truck was used in connection with farming and negatived the idea that said truck was used wholly in the transportation of livestock in connection with the partnership business; that the said defendant Charles Bauman and his partner Ralph Brown, spent their entire time in purchasing and selling livestock which was thereupon assembled and transporated to the stockyards in Napoleon; and from the stock-yards in Napoleon in the insured truck to various packing houses, including one in the city of Toledo.

Plaintiff further says that in said report said Charles Bauman represented concerning the use of said truck at night, that said truck was driven at night "very seldom", whereas in truth and in fact said truck was used almost exclusively in the night season for the purpose of hauling said livestock from the stockyards belonging to said partnership to the packing houses at Toledo, Ohio, and other points; whereby the risk attendant upon the operation of said truck was greatly enhanced over the risk from the use thereof as represented by the said Charles Bauman in said statement.

Plaintiff further says that the representation made by the said Charles Bauman to plaintiff in connection with the "rest periods" provided said drivers were false and untrue in that the driver of said truck was required and permitted to use said truck for the hauling of said livestock from Napoleon to various packing houses at night, and that at the same time said driver was required and permitted during the day time, to haul stock from the farms where the same was purchased to the yard of the partnership at Napoleon; and said driver was required and permitted to take his rest upon the highway whenever and wherever a short time might be available for him to take such rest.

Plaintiff further says that the said Charles Bauman misrepresented to plaintiff the ages of the drivers of said truck having represented that said drivers were of the mature ages of 24 and 27 respectively, whereas in truth and in fact, for months past, and for a long time preceding the issuance of policy No. C11470, said Gerald Nye, who is 19 years of age in July 1940, was required and permitted to operate said truck, and other trucks, in excess of any normal operating time for drivers of mature age.

Plaintiff further says that said policy of insurance provided, subject to the limitations of liability therein set forth and to the conditions and terms thereof, that plaintiff would pay on behalf of defendant, Charles Bauman, designated in said policy as the assured, all sums which the assured should become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons caused by accident and arising out of the ownership, maintenance or use of the automobile so insured; and would pay on behalf of the assured all sums which the assured should become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, caused by accident and arising out of ownership, maintenance or use of the automobile so insured.

Said policy further provided that plaintiff should defend in the name of the assured, Charles Bauman, any suit which might be brought against the assured on account of such accident.

Said policy further provided that any person while using the automobile so insured, and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is "pleasure and business" or "commercial", each as defined in said policy, and provided further that the actual use thereof was with the permission of the named assured, should be entitled to the protection of the policy.

Plaintiff further says that on the 12th day of July, 1940, about 5:30 A. M.

the defendant, Gerald Nye, was driving said truck from Toledo, Ohio, to the stockyards of said partnership at Napoleon, Ohio, after having delivered, during the night season, a load of hogs to Toledo, Ohio, on the business of said partnership; that on said return trip said defendant, Gerald Nye, became involved in a collision with said truck and a Toledo-bound bus belonging to and operated by Pennsylvania Greyhound Lines, Inc. Said bus was being operated by one John French. As a result of said collision the said John French and two other persons, all of whom were non-residents of Ohio, were killed; that several persons riding in said bus were injured but plaintiff is advised that none of said injured persons were residents of this state; that to date hereof no action has been threatened against the defendant except by Pennsylvania Greyhound Lines, Inc., which corporation has commenced an action against said defendant, Charles Bauman, to recover the sum of $5000 alleged property damage sustained by said bus.

Plaintiff further says that as to said suit now filed and if suits are commenced by the administrators and/or executors of said deceased parties and by said injured parties against the said, Charles Bauman, or the said, Gerald Nye, plaintiff will be under the necessity of electing whether or not to defend said suit and to determine whether to do so at its peril; that plaintiff will be obliged to incur additional expense, which it believes unnecessary, in employing counsel, and other expenses necessary to the proper defense of said action; that in the event judgments be returned in said action against the defendants herein named, or either of them, a possible claim will be asserted by said defendant Pennsylvania Greyhound Lines, Inc. and/or the injured persons and/or the representatives of said deceased persons that plaintiff has waived, by defending, the provisions of its contract as set forth herein and that said defendant, Pennsylvania Greyhound Lines, Inc., and others as herein set forth will assert

that plaintiff is liable to them to the extent of the policy limits as provided in said policy; and plaintiff, if verdicts be returned and judgments be rendered against said Charles Bauman and Gerald Nye, will be obliged to defend itself against a supplemental petition which may be filed under and by virtue of the provisions of §9510-4 GC.

Plaintiff is entitled to the decree and order of this court determining whether plaintiff is under obligation to defend such actions as are or may be brought; and is entitled to the decree and order of this court determining whether or not the plaintiff is liable to pay any judgments which may be recovered in said actions to the extent of the limits of its said policy.

Plaintiff says that a controversy has arisen and exists between plaintiff and defendants; that plaintiff maintains that under the terms and provisions of said policy and because of the facts herein set forth, there is no coverage and there is no duty or obligation whatsoever upon its part (1), to defend, or in any manner protect, the interests of defendants, Charles Bauman and Gerald Nye in the pending suit and in such additional suits as may be brought against them, or (2) to pay, to the extent of said policy limits, any judgments rendered against the defendants Charles Bauman and Gerald Nye; that it should be judicially determined herein whether or not there is any liability whatsoever under said policy, thus avoiding further unnecessary litigation and clarifying the legal rights of all parties concerned without further litigation.

Plaintiff further says that it does not know and cannot ascertain its rights, duties, status, obligations or legal relations to the said defendants herein under the circumstances; and that if the question of coverage under said policy and its liability to the defendants is not determined by the court in this action, this plaintiff must decide, at its peril, the questions pertaining to coverage under its policy, and pertaining to its liability; and if plaintiff determines not to defend, it takes its chance of no

defense being made by the defendants herein referred to; that is a risk which plaintiff ought not be required to take; and that all questions pertaining thereto can be determined in this suit, and plaintiff is entitled to have a declaration by this court of its rights, status, duties, obligations or legal relations to the said defendants under the uniform declaratory judgment act of Ohio, being §§12102-1 to 12102-16 GC.

Wherefore plaintiff prays that this court determine the rights, status, duties, obligations and legal relations between plaintiff and defendant growing out of the contract and facts stated herein, and prays that this court determine that plaintiff is under no obligation:

(1) To defend any actions which have or may be brought on account of the accident as aforesaid described;

(2) That it is not liable to the said Pennsylvania Greyhound Lines, Inc., or to others involved in said accident, to pay any judgments that may be returned against the defendants Charles Bauman or Gerald Nye in said cause;

and for such further relief to which plaintiff may be entitled.

In its amendment to the petition the plaintiff alleges that said applications for insurance each recited:

"I hereby apply to the Pioneer Mutual Casualty Company for a policy of insurance in accordance with the above statements which I warrant to be true",

and further recited,

"Any policy issued to me is based on above statements made by me."

Plaintiff further says that the policy issued to the said Charles Bauman provided that the same was issued to and accepted by the said Charles Bauman in consideration of the payment of the premiums, and the statements contained in the declarations, and the said Charles Bauman warranted said statements so contained in the Declarations to be true.

The plaintiff renews the prayer in its petition contained and further prays that said policy of insurance be cancelled and ordered surrendered up to the plaintiff.

The demurrer of the defendant, Pennsylvania Greyhound Lines, Inc., sustained by the judgment, omitting the caption and signature, is in the words and figures following, to-wit:

"Now comes the defendant, Pennsylvania Greyhound Lines, Inc., and demurs to the petition herein upon the following grounds, to-wit:

1. That the petition does not state facts which constitute a cause of action against these defendants;

2. That there is a defect in parties defendant in that necessary parties are not joined; and

3. A declaratory judgment would not end the uncertainty or controversy."

The motion of the defendant Charles Bauman referred to in the judgment is a motion to strike from the petition certain words and phrases specified in said motion.

As the consideration and disposal of the appeal in the instant case is dependent upon the nature of the case, it is essential that a determination of the nature of the case be made before the merits of the appeal are considered.

An action for a declaratory judgment is a special statutory proceeding unknown to chancery and therefore does not constitute a chancery case within the meaning of §6 of Art. IV of the Constitution of Ohio, and consequently the appellate jurisdiction in the trial of chancery cases, conferred by the constitutional provision upon the court of appeals does not extend to such an action.

The main characteristic of the declaratory judgment which distinguishes it

from other judgments is the fact that it conclusively declares the pre-existing rights of the litigants without the appendage of any coercive decree. Borchard, Declaratory Judgments, Preface, page 1.

An examination of the petition and the amendment thereto discloses that the declaratory judgment sought in this case involves the same issues of fact and law as a decree of cancellation in equity involves, so that if the facts pleaded in the petition and the amendment thereto are sufficient to entitle the plaintiff to the declaration sought they are also sufficient to entitle the plaintiff to the coercive decree of cancellation in case such a decree is sought.

In the amended petition in the instant case the plaintiff, in addition to praying for the declaratory judgment, prays for "such further relief to which plaintiff may be entitled", and in its amendment to the petition plaintiff renews the prayer of the petition and further prays for a coercive decree of cancellation, which further and additional relief is incompatible with the relief which may be granted in a declaratory judgment, thus fixing the character of the action as one in chancery for cancellation and not one for a declaratory judgment.

The right of appeal does not rest upon the sufficiency of the pleadings but depends on the nature of the case. **Dodsworth v Hopple et, 33 Oh St 16.**

The case being in its nature one in chancery, and the appeal being upon questions of law and fact, and the right of appeal not resting upon the sufficiency of the pleadings but depending upon the nature of the case, the case, under the constitutional provision mentioned, stands for trial de novo in this court.

And as the case stands for trial de novo in this court, pleadings may be amended and additional persons made parties in the same manner and to the same extent pleadings may be amended and additional persons made parties in similar chancery cases in the common pleas court; and the demurrer and motion to the petition and amendment thereto will be considered in the same manner as if originally filed in this cause in this court.

While it does not appear that there is any material difference in the rules of law applicable to a declaration of the character prayed for in the petition, and those applicable to a chancery action for cancellation, the case being one in chancery will be considered in the light of the rules applicable to chancery cases of this character, without reference to the rules applicable to actions for declaratory judgments.

The various grounds of the demurrer will be first considered in their order, and the motion will be next considered.

1. That the petition does not state facts which state a cause of action against these defendants.

We will first consider whether the existence of necessary conditions precedent to relief by way of cancellation are pleaded.

A contract induced by fraud is voidable at the election of the one defrauded. Until the one defrauded **Headnote 7.** ed signifies his election to avoid the contract by returning or offering to return any consideration received by him upon the contract, or otherwise place the defendant in status quo, or sufficiently excuse himself from that duty, the contract stands as a valid contract, and cancellation will not be awarded. **Railroad Company v Steinfield, 42 Oh St 449 at page 455 et seq. 6 O. Jur., Cancellation of Instruments, §35, page 551, et seq. 4 R. C. L.,** Cancellation of Instruments, §25, page 513. Black on Rescission and Cancellation, Second Edition, Volume 3, §617, p. 1485.

392

An examination of the petition and amendment thereto discloses that no facts are pleaded showing the return by plaintiff to Bauman of the premium the petition shows it received upon the policy sought to be cancelled, and no offer upon plaintiff's part to return such premium or otherwise place the defendant Bauman in status quo, or sufficienly excuse itself from that duty. Consequently the facts █ stated are insufficient to state a cause of action for cancellation and the demurrer to the petition and amendment thereto will be therefore sustained upon this ground.

Upon this first ground of demurrer we will also consider whether the petition states facts showing fraud in the procurement of the policy, entitling plaintiff to relief by way of cancellation if a cause of action for cancellation should be otherwise properly pleaded.

In the first paragraphs of the petition the plaintiff alleges that the defendant Charles Bauman first applied for insurance from plaintiff on the 3rd day of May, 1937, and at that time made certain representations in said application as to the use of the truck for which said coverage was asked, and that from year to year said insurance was renewed on the anniversary date thereof. Subsequent allegations in the petition are to the effect that when said policy of insurance was renewed on May 3, 1938, said insurance was accepted by plaintiff on the basis of the truth of certain statements contained in said application, and then sets forth the representations, and further alleges that on the strength of said application said policy was again renewed on the renewal date of May 3, 1939.

The petition contains no averments as to any application other than the one of May 3, 1937, so it must be assumed that the allegations in the amendment to the petition relating to "application for insurance" refers to the application mentioned.

The written signed report furnished by Charles Bauman at the request of the plaintiff, during the month of January, 1940. contains all the other representations made by the defendant Bauman, as pleaded by plaintiff. And the plaintiff further pleads that it was on the strength of said representations (referring to the representations made in the written report mentioned) and believing them to be true, and having no knowledge to the contrary, plaintiff continued on said risk and on May 3, 1940, renewed its policy of insurance on said truck. The representations appearing in said report, as pleaded, are as follows:

1. That said truck was used for the purpose of hauling farm products and livestock.

2. That it carried applicant's property but not the property of others.

3. That the principal towns to which said truck was driven, or would be driven, were Archbald, Wauseon, Delta, Liberty Center, Deshler, Holgate, Toledo and Hicksville, and the farthest point to which said truck would be driven was Sandusky, Ohio.

4. That trips were made with said truck approximately each day except Sundays.

5. That said truck was very seldom driven at night.

6. That said truck was driven by two hired drivers who were paid by the day.

7. That extra drivers were not used.

8. That no rest periods were needed as the drivers were not gone sufficiently long to require rest periods.

9. That the nationality of said drivers was American, aged 24 and 27, respectively. and white.

It is further alleged that the warranties contained in said policy specified that said automobile was used for hauling livestock and farm products.

It is further alleged that said policy provided and the assured in accepting the same agreed that the policy was made and accepted subject to the declarations contained in said policy and to the conditions and stipulations printed therein, together with such other provisions, agreements or conditions as might be endorsed thereon or added thereto and that said policy fur-

ther provided that the entire policy should be void if the assured or his agent had concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning said insurance or the subject thereof or if the assured or his agents made any attempts to defraud the company either before or after the loss.

It is not alleged that either the application or written report referred to are by reference or otherwise incorporated in the policy, and there are no allegations as to the subject matter of declarations contained in said policy or of the conditions and stipulations printed therein or as to any other provisions, agreements or conditions endorsed thereon or added thereto except the allegations as to the subject-matter of the warranty above set forth and the subject-matter of the provisions of the policy as to its avoidance for misrepresentation and fraud as above set forth, and except the allegations as to the subject-matter of the provisions of indemnity and the defense of action clauses of the policy; and there is no allegation that the assured or his agent made any attempt to defraud the company either before or after loss, except as the representations mentioned might constitute an attempt to defraud.

As the original application is not, by reference or otherwise, incorporated in the policy, the warranties alleged in the petition to have been made in the application, are not warranties appearing upon the face of the policy, and if, in view of the subsequent report made by the assured to the insurer covering the same subject-matter, they have any legal effect such so-called warranties merely constitute representations as distinguished from technical warranties. **Hartford Protection Insurance Co. v Harmer, 2 Oh St 452.** And in order to constitute a ground for avoiding the policy such representations would have to constitute misrepresentations of material facts or circumstances concerning the insurance or the subject-matter thereof as prescribed in the policy.

The subject-matter of the representations contained in the application and in the written report subsequently made is the same, and insofar as the representations made in the report differed from the representations made in the application, the representations made in the report, as a matter of law superseded those made in the original application, and the plaintiff is therefore precluded from claiming that in the issuance of the policy in controversy in this action which was issued subsequent to the report, it relied in any manner upon the representations contained in the application. Consequently we will hereafter confine our consideration of the representations alleged in the petition, to the representations made in the report.

It is not alleged that the representations made in the written report were warranted to be true, so in order to avoid the policy it was essential that the plaintiff allege facts showing the representations made, to be material as well as false.

It is not alleged in the petition that the defendant Bauman made any representation to the plaintiff, or that the policy contained any recital or provision that the said Bauman was not the exclusive owner of the insured property, but the petition alleges that Bauman was not the exclusive owner of said property but that the same belonged to a partnership in which one Ralph Brown was a part owner, and that while the title to the physical property of said partnership was in said Bauman, the said Ralph Brown had an undivided interest therein and that said truck on July 12, 1940 (being the date the collision occurred) was being operated by and in the interest of the partnership consisting of said Bauman and Ralph Brown who were then and there engaged in buying, selling and delivering livestock to and from a stockyard maintained by them in Napoleon.

We will now discuss the representations made in the written report, in the order they are hereinbefore set forth.

As to the representations we have heretofore designated by numbers 3, 4, 6 and 7, we deem it sufficient to state that their truth is not negatived by any of the other allegations of the petition and the amendment thereto, and consequently the plaintiff fails to plead any facts entitling them to relief as to them.

The other representations we will discuss in the order hereinbefore set forth.

1. That said truck was used for the purpose of hauling farm products and livestock.

The plaintiff, for the purpose of establishing the falsity of this representation, pleads facts showing that the truck up to the time of the collision described in the petition, was used exclusively for the hauling of livestock, and attempts to plead an inference or implication arising from this representation, that the truck was used in connection with farming, and 'negativing the idea that it was used wholly in the transportation of livestock' in connection with the business in which the assured Bauman and Ralph Brown were partners. The wording of this representation does not warrant such an inference or implication and no facts are pleaded showing that the hazard was in any way increased or affected by the hauling of livestock exclusively instead of farm products and livestock Furthermore, there is no statement or intimation in this representation that both farm products and livestock would be hauled together or that either would be hauled at any particular time or at any particular period during the term of the insurance, and the terms of the representation are such that either might be hauled at any time and at any period during the term of the policy regardless of whether the other was hauled at such time or during such period. If the representation had the effect of requiring the assured to haul some of each class during the term of

the insurance the falsity of the representation could be determined only after the expiration of the term of the insurance, as the insured might at any time prior to the expiration of the term of the insurance comply with this requirement, if it is a requirement. The term of the policy did not expire for some time after the collision. The facts pleaded therefore are insufficient to show any material misrepresentation in the respect mentioned.

2. That it carried applicant's property but not the property of others.

Plaintiff attempts to negative the truth of this representation by pleading facts that while Bauman held the legal title to the property, one Ralph Brown had an undivided interest as a partner therein.

No facts are pleaded showing how the hazard would be in any way increased or affected by the fact that the truck carried the property of the partnership of which assured was a partner. instead of property belonging solely to the assured, and no facts are pleaded ed as to any representations or terms and conditions of the policy requiring the assured to have the sole exclusive title to the property carried.

The title which it is alleged Bauman held, substantially conformed to the representation, and the pleaded facts fail to show any material misrepresentation in the respect mentioned.

5. That said truck was very seldom driven at night.

This representation is negatived by an allegation that the truck was used almost exclusively in the night season for the purpose of hauling livestock from the stockyard belonging to said partnership, to packing houses at Toledo and other points, whereby the risk attendant upon the operation of the truck was greatly enhanced over the risk from the use thereof as repre-

sented by the said Charles Bauman in said statement.

The facts alleged show that this representation was material. The truth thereof is negatived as above set forth. The petition therefore pleads the misrepresentation of a material fact in the respect mentioned, which upon proof would entitle plaintiff to relief by way of cancellation, in the event a cause of action for cancellation is otherwise properly pleaded.

8. That no rest periods were needed, as the drivers were not gone sufficiently long to require rest periods.

The truth of this representation is negatived by the allegation that the driver of said truck was required and permitted to use said truck for the hauling of said livestock from Napoleon to various packing houses at night, and that at the same time said driver was required and permitted during the daytime to haul stock from the farms where the same were purchased, to the yards of the partnership at Napoleon; that said driver was required and permitted to take his rest upon the highway whenever and wherever a short time might be available for him to take such rest. The taking of rest periods along the highway would as a matter of law enhance the risk attendant upon the operation of the truck over the risk from the use thereof as represented. The misrepresentation of material fact, in the respect mentioned is therefore pleaded, which, upon proof, would entitle plaintiff to relief by cancellation, in the event a cause of action for cancellation is otherwise properly pleaded.

9. The nationality of said drivers was American. aged 24 and 27, respectively, and white.

This representation is negatived only as to the age of one of the drivers of the truck, Gerald Nye, who was in charge of the truck at the time of the collision referred to in the petition, by the allegation that in truth and in fact, for months past, and for a long time preceding the issuance of Policy No. 11470, said Gerald Nye, who was 19 years of age in July, 1940, was required and permitted to operate said truck, and other trucks, in excess of any normal operating time for drivers of mature age. The operating time of the truck was not incorporated in this representation, so the only question presented by the averment of this representation, and the negativing of the truth thereof, is whether the representation that the driver is 24 years of age when he is in fact 19, is a material misrepresentation.

A minor nineteen years of age is not prohibited from driving trucks and there is no allegation of any fact showing that the risk attendant upon the driving of such a truck by such a minor would be in any manner enhanced over the risk attendant upon the driving of a truck by one of more mature age. A material misrepresentation in the respect mentioned is therefore not pleaded.

The next matter to be considered is whether facts are pleaded showing a breach of the warranty contained in the policy which according to the petition specified that said automobile was used for hauling livestock and farm products. This warranty is practically in the same form as the representation hereinbefore designated as representation number one, and its breach is attempted to be alleged in the same allegations used in attempting to negative the truth of such representation.

There is no provision or implication in the warranty or inference arising therefrom that both farm products and livestock would be hauled together or that either would be hauled at a particular time or at any particular period of time during the term of the insurance, and the terms of the warranty are such that either might be hauled at any time and at any period during the term of the policy regardless

of whether the other was hauled at such time or during such period. If the warranty had the effect of requiring the assured to haul some of each class of the items mentioned during the term of the insurance the question of whether the warranty had been breached could be determined only after the expiration of the term of the insurance, as the insured might at any time prior to the expiration of the term of the insurance comply with this requirement, if it is a requirement. The terms of the policy did not expire for some time after the collision, and the facts pleaded are therefore insufficient to show any breach of the warranty mentioned.

We will turn now to the second ground of the demurrer.

2. That there is a defect of parties defendant in that necessary parties are not joined.

Applicable to this ground of demurrer is the general rule that in suits for rescission or cancellation all persons whose rights, interests, or relations with or through the subject-matter of the suit would be affected by a cancellation or rescission **Headnotes 18, 19.** should be brought before the court, so that they can be heard in their own behalf. This is in accordance with the well settled rule that in suits in equity every person having or claiming equitable or legal rights in the subject-matter must be made a party. The court cannot undertake to cancel a written instrument without having before it all the parties to be affected by the proposed cancellation. 9 C. J., Cancellation of Instruments, §126, Page 225. See also 6 O. Jur. Cancellation of Instruments §48, page 587; 9 American Jurisprudence §54, page 395; Black on Rescission and Cancellation, Second Edition, Volume 3, §657, page 1576; Bonsal v Camp, 69 S. E. 978.

A generally recognized exception to this rule is that relief by way of cancellation may be granted in a case where the interests of **Headnote 20.** various parties are severable, so that the case can be completely decided as between the immediate parties, though there may be an outstanding interest in one the court cannot reach by process. Black on Rescission and Cancellation, Second Edition, Volume 3, §657, page 1576, Bonsal v Camp, 69 S. E. 978; Barney v Baltimore City, 6 Wall 284; Shields v Barrow, 17 Howard, 130, 15 Law Edition, 158.

The application of this rule and exception thereto is exemplified in the opinion in the case of Shields v Barrow, 17 Howard 130, 15 Law Edition, 158, an action involving the question as to necessary parties in a chancery action, wherein it is stated:

"If only a part of those interested in the contract are before the court, the decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them, while it is set aside and contracting parties restored to their former condition, as to others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely seperable from the rights of those absent, otherwise the latter are indispensible parties."

Speaking of the effect of non-residence of persons who are proper parties to a suit in equity, Barton says in the first volume of his Chancery Practice, at page 148:

"Except where express provision is made by statute for such cases, it is held to be sufficient excuse for not making persons parties to a suit, that they are without the jurisdiction of the courts; but this is only true of such persons as are not indispensible to the just ascertainment of the merits of the cause, and whose interests will not be prejudiced by the decree."

The petition in this case alleges facts showing that a number of persons were killed in the collision in which the automobile covered by the insurance was involved, and that a number of persons were injured.

Representatives of none of the deceased persons are made parties, and none of the injured persons are made parties. The representatives of each of the deceased persons, and each of the injured persons, upon the happening of the collision acquired a right upon recovery of a judgment for damages against the assured, to enforce the provisions of the policy of insurance and are therefore interested in the subject matter of the action, and unless there is a legal excuse for failure to make them parties, are necessary parties to the action. The interests of these persons, however, are severable, and if proper avermetns are made in the petition that they were beyond the jurisdiction of the court and not amenable to its process, bringing the case within the exception above mentioned, the action could proceed without them being made parties, but if a decree of cancellation should be rendered the policy of insurance would still be in full force as respects the persons not made parties.

It is alleged in the petition that all the persons killed and injured in the accident were non-residents of the State of Ohio, but it is not alleged that summons could not be served on the legal representatives of the deceased persons or upon the injured persons within the jurisdiction of the court, which allegations are essential to authorize the court to render a decree of cancellation without such persons being made parties.

For the reasons mentioned, there is a defect of parties defendant and the demurrer will be sustained upon this ground.

3. A declaratory judgment would not end the uncertainty of the controversy.

As this case is before this court as a chancery case, this ground of the demurrer is not available to the demurrant and will be overruled.

The motion of the defendant Bauman to strike from the petition will be treated as a general demurrer and sustained for the reasons given for the sustaining of the first ground of the demurrer of the defendant Pennsylvania Greyhound Lines.

The demurrer, and the motion treated as a demurrer, being sustained upon the grounds and for the reasons and to the extent hereinbefore mentioned, leave will be given to plaintiff, if it so desires, to further plead and make additional parties defendant herein within ten days following the announcement of the decision herein; and order will be made accordingly.

KLINGER, PJ. and CROW, J., concur.